IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| **Michael Allen Berry,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | 1:22cv1302 (CMH/WEF) |
| | ) | |
| **Virginia Department of Corrections, et al.,** | ) | |
| **Respondents.** | ) | |

MEMORANDUM OPINION

Petitioner Michael Allen Berry ("Petitioner" or "Berry"), a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. The petition was "an unintelligible narrative," and he was directed to amend. [Dkt. No. 14]. In his amended petition he alleges that the Virginia Department of Corrections ("VDOC") violated his due process rights by "lumping his" four ten-year sentences together, "and applied the wrong good time statute," which effected how he earned good time, [Dkt. No. 16 at 5]; the Virginia Parole Board ("VPB") violated his due process rights and denied him the right to a fair hearing because "only one member. Mr. Chadwick Dodson (The Chairperson), to make the decision not to grant [him] parole release," [Id. at 6-7]; and that the Supreme Court of Virginia Supreme denied him his right to due process because it dismissed his state habeas petition for lack of jurisdiction. [Id. at 8]. The Respondent filed a Rule 5 Answer and a Motion for Summary Judgment, with a supporting brief. The Petitioner exercised his right to respond as provided by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) and filed a brief on August 11, 2023. [Dkt. No. 30].

After reviewing the pleadings, the Court directed the Respondent to provide documents or an affidavit to complete the record of the VPB proceedings at issue. [Dkt. No. 31]. The respondent filed the requested information, which included an affidavit, on December 13, 2023.

[Dkt. Nos. 34, 34-1]. On December 14, 2023, the Court, pursuant to Roseboro, entered an order advising Berry that he had a right to respond, [Dkt. No. 35], and Berry was given an extension of time to respond and he filed his response on January 17, 2024, with copies of the March 6, 2023 and March 22, 2022 letters from the VPB. [Dkt. Nos. 42, 42-1]. On February 28, 2024, the Court gave notice it was converting the motion to dismiss to a motion for summary judgment, see Fed. R. Civ. Proc, Rule 12(d), and gave petitioner additional time to respond or seek limited discovery. [Dkt. No. 43]. On March 14, 2024 Berry responded. [Dkt. No. 45].

Accordingly, this matter is now ripe for disposition. For the reasons that follow, the Court has determined that respondent's Motion to Dismiss will be granted, and the petition dismissed with prejudice.

## I. Background

Petitioner is currently detained by the VDOC at the Haynesville Correctional Center. Berry was convicted of four felonies by the Circuit Court for Albemarle County, Virginia and judgment was entered imposing ten-year sentences for each of the four felonies on January 28, 1999. The felonies included two counts of sodomy in violation of Virginia Code § 18.2-67.1 (offense dates August 25, 1994 and October 31, 1994); and two counts of rape in violation of Virginia Code § 18.2-61(offense dates October 31, 1994). The four sentences were run consecutive to each other, for an aggregate forty-year term. [Dkt. Nos. 16 at 1, 5, 16; 34-1 at 2].

Berry' discretionary parole eligibility date was March 25, 2013, and his mandatory parole release date is October 14, 2025. Berry was denied parole on March 17, 2022, and Berry was notified by a letter dated March 18, 2022. [Dkt. No. 34-1 at 2, 10-11].[1] Berry's 2022 petition for

---

[1] Berry appealed the decision asserting that the failure to confirm four VPB appointees violated VPB policy. Berry v. Virginia Department of Corrections, et al., Record No. 220355, at 27. The appeal was denied on April 20, 2022 for several reasons, one of which was Berry had not shown that there was a "significant error in information or application of policies or procedures." Id. at 28.

2

parole was heard by three VPB members.[2] Each of the three members that heard his parole were appointed to the VPB in January 2022, and their respective appointments ended on September 23, 2023; March 10, 2022; and March 10, 2022. [Id. at 3].[3]

On March 6, 2023, three members of the VPB heard and denied Berry's 2023 petition for parole. [Id.].[4] One member was appointed on: April 1, 2022, and is still serving; the second member was appointed on April 20, 2022, and his appointment ended on February 8, 2023; and the third member was appointed on January 17, 2022 and his appointment ended on September 8, 2023. [Id. at 3-4].

On June 15, 2022, Berry filed a petition for writ of habeas corpus in the Supreme Court of Virginia, which alleged that the circuit court had imposed four consecutive ten-year sentences and that the VDOC violated his rights by "lumping" his four ten-year sentences into an aggregate 40-year term. Berry also alleged that the VPB improperly denied his discretionary parole because

---

[2] Berry alleges that he was denied parole by only one member of the VPB based upon a newspaper article. Newspaper articles are hearsay and are not evidence that can dispute a proper affidavit. Respondent submitted an affidavit by the current VPB Chair who based her affidavit on personal knowledge and the records of the VPB maintained in the regular and ordinary course of business. [Dkt. No. 34-1 at 1]. The Fourth Circuit has held that newspaper articles are clearly hearsay. Greene v. Scott, 637 F. App'x 749, 752 (4th Cir. 2016) (affirming district court's ruling a news article was inadmissible because it was hearsay) (citing Nooner v. Norris, 594 F.3d 592, 603 (8th Cir. 2010) ("Newspaper articles are rank hearsay"). Berry's assertion is without a basis in admissible evidence, and does not create a dispute of fact.

[3] The current VPB Chair has averred that VPB members do not serve set terms, and serve at the pleasure of the Governor. [Dkt. No. 34-1 at ¶ 16]. The Chair also indicates that while the appointment requires confirmation by the General Assembly, the appointment of a VPB member "ends only when the Governor replaces or terminates a VPB member or when a VPB member terminates his or her employment." [Id.]. Each appointee is a paid employee of the Commonwealth, and while only two members of the VPB are full-time employees, the others are deemed part-time employees. See Va. Code Ann. § 53.1-135.

[4] Berry objects to the respondent including the information about the denial of his petition for parole in March 2023 as part of his response to this Court's order for additional information about the March 2022 parole hearing, asserting it was "not relevant." [Dkt. No. 42 at 1]. The United States Supreme Court, however, has held that "[i]t is the duty of counsel to bring to the federal tribunal's attention, 'without delay,' facts that may raise a question of mootness." Arizonans for Official English v. Arizona, 520 U.S. 43, 68n.23 (1997) (citing Board of License Comm'rs of Tiverton v. Pastore, 469 U.S. 238, 240 (1985)). His objection to relevancy is overruled. He has a similarly frivolous assertion that the respondent's affiant "tampered" with evidence because the copies of the VPB letters the affiant attached to her affidavit had her digital signature instead of the previous VPB Chairman's signature. The affiant states in her affidavit that she was appointed on September 15, 2023, which is after the date of each letter. The affiant did not in any manner mislead the Court or petitioner.

3

only one member made that decision.[5] The Supreme Court of Virginia dismissed his state habeas petition on August 11, 2022, and denied his petition for rehearing on October 6, 2022. Berry v. Virginia Department of Corrections, et al., Record No. 220355.

On November 14, 2022, Berry filed his federal § 2254 petition, and subsequently filed his amended § 2254 petition on May 15, 2023. The amended petition raises three claims:

1) By "lumping [his] sentences together" the VDOC violated Virginia Code § 53.1- 199; as well as his Fifth and Fourteenth Amendment rights. By aggregating the sentences, the VDOC also "chang[ed] the fashion" in which Berry earns good time credits on each of his four sentences. The change in the manner in which Berry earned good time has "resulted in a loss of good time credits" and has resulted in him serving "a longer sentence" in violation of state law. [Dkt. 16 at 16-17].

2) The VPB violated "Virginia Code §§ 2.2-200(C)(1) and 2.2-105, infringing upon petitioner's state created liberty interest when [the VPB] made a decision 'not to grant' parole release with only one member sitting." [Id. at 20].

3) "The Virginia Supreme Court has jurisdiction to hear petitioner's habeas petition." [Id. at 23].

## II. Exhaustion

Respondent argues that Berry's claims related to his alleged misclassification regarding good time credits and that the Supreme Court of Virginia incorrectly dismissed his state petition are not exhausted because he did not raise them in state habeas. [Dkt. No. 26 at 3]. Exhaustion is satisfied as long as the claim has been fairly and properly presented to the highest court, either on direct appeal or in state collateral proceedings. Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000).

Claim 1 has two parts. The first part alleges the VDOC violated Berry's rights by aggregating his four ten-year sentences into a forty-year aggregate term of confinement. The respondent admits this portion of Claim 1 is exhausted. The second portion of Claim 1 alleges

---

[5] The Virginia Parole Board Policy Manual states that VPB "decisions to grant or not grant parole shall require the concurrence of no less than three members of the board." See https://vpb.virginia.gov/files/1107/vpb-policy-manual.pdf (Revised Oct. 1, 2006).

that VDOC's miscalculation of his sentences has resulted in his loss of good time credits because he is classified as earning good time under the Earned Sentence Credit ("ESC") system and he should have been classified as earning good time under the Good Conduct Allowance ("GSA"), which respondent argues is not exhausted because it was not raised in the state habeas petition. Respondent admits Claim 2, regarding the denial of his parole in 2022, is exhausted, but denies that Claim 3, asserting the Supreme Court of Virginia violated his rights by dismissing his state habeas for lack of jurisdiction, is exhausted.

Ruling on the question of exhaustion, however, is not necessary for reaching a decision on respondent's motion because the Court may deny a § 2254 petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Berry's petition and other filings misstate the applicable law as well as the cases and statutes he relies upon.

### III. Standard of Review

Respondent's motion to dismiss is supplemented by documents and an affidavit. The affidavit is not disputed by any competent evidence. Consequently, the assertions of fact therein will be considered by the Court.

*A. Claim 1*

In the first part of Claim 1, Berry alleges that the VDOC violated his rights under Code § 53.1-199 by aggregating his sentences into a forty-year aggregate term of confinement. Berry argues that he should be considered for parole on each ten-year sentence even though the four ten-year sentences are served consecutively. His argument is based upon Virginia case law that has been overruled and was decided before Virginia's current statutory scheme. He also ignores the plain language of the very statutes he asserts support his position.

It is well established that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979). Inmates in Virginia, at most, have an expectation that they may, at some time, be released on parole should the VPB determine that such release is in the interests of society and the prisoner. See Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir. 1991). However, the Fourth Circuit has observed that although the Virginia statutes provide "a prisoner the right for parole consideration at a specified time, at whatever time a prisoner is considered for parole, his actual release is a discretionary decision." Id.

In the context of habeas, and contrary to Berry's argument, the Fourth Circuit has held that for prisoners serving consecutive sentences, "custody . . . is defined not by any one particular sentence but by the *aggregate* of the sentences." Bernard v. Garraghty, 934 F.2d 52, 54 4th Cir. 1991) (emphasis added, citing Peyton v. Rowe, 391 U.S. 54, 64 (1968) ("'Custody,' comprehends such a petitioner's status for the entire duration of his imprisonment—the aggregate of the sentences")); see also Garlotte v. Fordice, 515 U.S. 39, 46 (1995) (petitioner may challenge prior, expired sentence to which current sentence was consecutive, because "we view consecutive sentences in the aggregate, not as discrete segments") (citing Peyton, 391 U.S. 64-65); cf. Goode v. Markley, 603 F.2d 973, 977 (D.C. Cir. 1979) (well settled that it is proper "to aggregate consecutive sentences for the purpose of determining parole eligibility"). Peyton addressed the custody of a Virginia inmate, Rowe, and his parole eligibility. Rowe had two sentences—a 30-year sentence for rape and a 20-year sentence for abduction, which resulted in an aggregate sentence of 50 years, but Rowe only challenged the conviction for abduction. Peyton found that "[f]or purposes of parole eligibility, under Virginia law [Rowe] is incarcerated for 50 years." 391 U.S. at 64. The district had found, under McNally v. Hill, 293 U.S. 131

6

(1934), that since Rowe had not yet begun to serve the sentence for abduction it did not have jurisdiction to consider his habeas petition because Rowe was not yet serving that sentence, which he would not start serving until 1993. Id. at 56, 64. In overruling McNally, Peyton held "that a prisoner serving consecutive sentences is 'in custody' under any one of them for purposes of" habeas jurisdiction. Id. at 67.[6]

Berry argues, based upon Virginia case law that pre-dates Peyton v. Rowe and decided in accordance with the immediate release rule established in McNally, that it is only possible "to serve one consecutive sentence at a time" in the Commonwealth. [Dkt. No. 16 at 18] (quoting Smyth v. Midgett, 101 S.E.2d 575, 579 (1954)). Berry's analysis neglects to note that the immediate release rule he cites to in Smyth v. Midgett, decided before Peyton, has been overruled and modified by statute.[7]

In Virginia, the "immediate release rule" established in McDorman v. Smyth, 47 S.E.2d 441 (Va. 1948), addressed consecutive sentences and held that habeas corpus relief "is available only where the release of the prisoner from his immediate detention will follow as a result of an order in his favor." Id. at 443. McDorman relied on Justice Stone's "excellent review and discussion of the history, use and purpose of the writ of habeas corpus" in McNally and observed

---

[6] The Fourth Circuit's opinion, Rowe v. Peyton, 383 F.2d 709, 717 (4th Cir. 1967) ("Rowe"), discusses Virginia law in greater detail noting that former Virginia Code § 53-251 allowed for arbitrary treatment of prisoners. Rowe explained that while in determining parole eligibility "Virginia treat[ed] the aggregate time imposed by consecutive sentences as 'the term of imprisonment,'" Virginia provided for "an administrative determination of the sequence of sentence service" for consecutive sentences, which was "an arbitrary, mechanical thing subject to subsequent variation and adjustment." Rowe noted that if an inmate had finished serving a sentence and was then held under the next consecutive sentence, the inmate would no longer be able to challenge the expired sentence. Id. 717-18. Rowe concluded that "[w]hen the one important, substantive fact is the aggregate of all of the successive sentences a prisoner is required to serve, his right of access to the courts should not be conditioned upon the sequence in which the state chooses to list consecutive or successive sentences for service." Id. at 718. In reversing the district court, Rowe held that Rowe was "in custody within the meaning of the statute under each of the consecutive sentences for the service of which he was committed, and he is presently entitled to test the constitutionality of any such sentence." Id.

[7] Smyth v. Midgett relied upon McDorman v. Smyth, 47 S.E.2d 441, 443 (Va. 1948), and both of those cases were decided before Peyton. See infra at 8-9 discussing Carroll v. Johnson, 685 S.E.2d 647 (Va. 2009).

7

that

> Under the Federal statutes which are similar to the Virginia statutes, the court there held that a prisoner in lawful custody on a conviction under the second count of an indictment, whose sentence thereunder had not been served, was not entitled to a writ of habeas corpus, on the ground that his conviction under a third count was invalid.

47 S.E.2d at 444.[8] The immediate release rule existed in 1948 and at that point in time the VDOC determined the "sequence" in which consecutive sentences were served.

In Rivers v. Martin, 484 F. Supp. 162 (W.D. Va. 1980), the district court recognized that "the Virginia habeas corpus statute was amended in 1968 to allow [a] petitioner to 'allege detention without lawful authority through challenge to a conviction, although the sentence imposed for such conviction is suspended or is to be served subsequently to the sentence currently being served by petitioner.'" Id. at 165 (quoting Va. Code Ann. § 8.01-654(B)(3)). The petitioner in Rivers cited to McDorman and other older decisions in an effort to excuse the exhaustion requirement. Rivers noted that "it is obvious that the 'immediate release' rule of the earlier Virginia decisions is no longer valid." Id.

Based in part on statutory changes, the Supreme Court of Virginia abrogated the

---

[8] Berry cites other cases, which, contrary to his assertion that they support his interpretation of § 53.1-199 and require that he earn good time credits on each individual sentence and that he is eligible for parole on each individual sentence, have no bearing on his case. Townes v. Commonwealth, 609 S.E.2d 1 (Va. 2005) has nothing to do with good time or parole eligibility. In Townes, the defendant was "no longer 'incarcerated for a sexually violent offense' at the time of the Director's notice to the Commitment Review Committee" and that "the trial court erred in ruling that Townes was subject to the provisions of the [Sexually Violent Predator Act] as a sexually violent predator," and reversed the circuit court's commitment of Townes as a sexually violent predator and dismissed the Commonwealth's petition. Id. at 4. Berry's reliance on Murphy v. Commonwealth, 521 S.E.2d 301, 303 (Ct. App. Va. 1999) is also misplaced because it has nothing to do with good time or parole. Berry cites Murphy for the proposition that in construing a statute, the "'plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction . . . .'" The last case cited, Turner v. Ewing, 63 Va. Cir. 117, 119 (Winchester County Cir. Ct. Sept. 15, 2003), involves a non-analogous scenario. In Turner, the prisoner was sentenced, had his parole revoked on an unrelated offense based upon his new convictions, and the sequence of when the sentences served mattered because in Virginia "[w]here a prisoner's parole is revoked after he has been imprisoned on another offense, as happened in this case, the sentences revoked for parole violation are served after the sentence for the new offence." Id. at 119 (citing Peyton v. Williams, 145 S.E.2d 147 (Va.1965); and Grace v. Peyton, 152 S.E.2d 292 (Va. 1967)).

8

"immediate release" rule in the <u>Carroll v. Johnson</u>, 685 S.E.2d 647 (Va. 2009). <u>Carroll</u> noted that "the scope of the writ of habeas corpus was expanded" after <u>McDorman</u> to include challenges to convictions when there is a suspended sentence, which is not being served," and to treat consecutive sentences as a single, aggregate term of imprisonment. In addition to the language in Code § 8.01-654(B)(3) noted above, <u>Carroll</u> noted the changes to Code § 8.01-654(A)(1), which "allows a petitioner to challenge the lawfulness of the entire duration of his or her detention so long as an order entered in the petitioner's favor will result in an order that, on its face and standing alone, will directly impact the duration of the petitioner's confinement." <u>Carroll</u>, 685 S.E.2d at 651-52; <u>see</u> <u>Clay v. Clarke</u>, No. 2:17cv627, 2018 U.S. Dist. LEXIS 184243, *20-22 (E.D. Va. Aug. 22, 2018), <u>adopted by</u>, 2018 U.S. Dist. LEXIS 183718 (E.D. Va. Oct. 25, 2018) (explaining that <u>Carroll</u> relied on "post-<u>McDorman</u> amendments" to the Virginia habeas statute that "contemplated the availability of habeas corpus jurisdiction where the petitioner had not yet begun serving the sentence he sought to challenge via habeas relief.") (citing Va. Code Ann. § 8.01-654(B)(3)); <u>see also</u> <u>Ramdass v. Angelone</u>, 187 F.3d 396, 407 (4th Cir. 1999) ("parole eligibility is a question of *state law* and therefore is not cognizable on federal habeas review").

Not only has the authority upon which Berry relies been overruled and modified by statute, but the plain language of the statutes that concern good time and parole refer to "term of imprisonment," and not specific sentences. Section 53.1-151 establishes when parole-eligible inmates are considered for parole, and under that statute an inmate is considered "[f]or the first time, . . . after serving one-fourth of the *term of imprisonment* imposed, or after serving twelve years of the *term of imprisonment* imposed if one-fourth of the *term of imprisonment* imposed is more than twelve years." (emphasis added). Section 53.1-199 also uses the phrase "term of imprisonment" within the context of the GCA system and provides that "[s]uch good conduct

9

allowance shall be applied to reduce the person's maximum *term of confinement* while he is confined in any state correctional facility. One-half of the credit allowed under the provisions of § 53.1-201 shall be applied to reduce the period of time a person shall serve before being eligible for parole." (emphasis added). Again, contrary to Berry's argument, the statute expressly provides that good conduct credits are applied to a term of confinement and not a specific sentence. This portion of Claim 1 will be dismissed.

Exhaustion aside, based upon the undisputed records provided by the respondent, Berry's assertion that he has been incorrectly placed in the ECS system instead of the GCA system has no basis in fact. The undisputed "Sentence Summary" provided by the respondent indicates that for each of the four sentences Berry is presently serving that he is earning good time in the GCA system. [Dkt. 34-1 at 5-9]. This portion of Claim 1 will also be dismissed.

### B. Claim 2

In Claim 2, Berry alleges that his parole was heard and denied by only one VPB member instead of three as required by the VPB policy. [Dkt. No. 16 at 21]. His claim has no merit.

First, even if his hearing in 2022 was in some way deficient, his remedy is not release but instead is a new hearing, which he had in 2023. See Bedford v. Clarke, No. 7:12cv411, 2013 U.S. Dist. LEXIS 21856, *5 (W.D. Va. Feb. 15, 2013), appeal dismissed, 537 F. App'x 203 (4th Cir. 2013) (even if there was error in the VPB's 2010 hearing, the petitioner has "already received the available remedy of reconsideration of parole" and in light of the VPB's decisions denying him parole in 2011 and 2012, "no realistic possibility exists that the Parole Board will determine that petitioner should have been paroled in 2010"); see also Vick v. Clarke, No. 1:15cv346, 2016 U.S. Dist. LEXIS 21951, *5 (E.D. Va. Feb. 23, 2016) (where plaintiff sought release on parole, Court noted that if it found "that petitioner did not receive a fair parole

proceeding, the only available remedy would be a new hearing before the present VPB, where petitioner could again be considered for discretionary parole), appeal dismissed, 670 F. App'x 78 (4th Cir. 2016). The 2023 hearing renders Claim 2 moot.

Second, although Virginia law does not create a right to parole release, "the Commonwealth has created a liberty interest in parole consideration" and "to satisfy the due process requirements triggered by this liberty interest, a parole board need only provide an offender an opportunity to be heard and a 'statement of reasons indicating . . . why parole has been denied.'" Bowling v. Dir., Va. Dep't of Corr., 920 F.3d 192, 200 (4th Cir. 2019) (quoting Bloodgood v. Garraghty, 783 F.2d 470, 473 (4th Cir. 1986)); see Burnette v. Fahey, 687 F.3d 171, 181 (4th Cir. 2012) ("to satisfy due process requirements '[a]t most ... parole authorities must furnish to the prisoner a statement of its reason for denial of parole.'") (quoting Franklin v. Shields, 569 F.2d 784, 801 (4th Cir. 1978) (en banc)). In 2022, the VPB provided Berry a right to be heard, considered his appeal, and he was given a list of reasons why his parole was denied.

Lastly, while Virginia "inmates may have some interest in parole consideration generally, it is clear that there is no 'protected liberty interest in the *procedures themselves*, only in the subject matter to which they are directed.'" Hill v. Jackson, 64 F.3d 163, 170 (4th Cir. ) (quoting Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993)). Hill held that

> [b]ecause the inmates here have no liberty interest in parole release under Virginia law, neither can they have any liberty interest in the underlying procedures governing parole determination, so long as the procedures themselves satisfy due process. See Ewell, 11 F.3d at 488 ("The procedures may be changed at the will of prison officials so long as they afford that process which is due under the Due Process Clause of the Fourteenth Amendment.").

Id. Furthermore, the Fourth Circuit has held that "federal courts must defer to state agencies *applying state law* and thus their oversight of state parole proceedings has been extremely limited." Vann v. Angelone, 73 F.3d 519, 522 (4th Cir. 1996) (emphasis added). Berry admits

11

that a VPB member denied his parole, and the affidavit submitted by responded establishes that the other two VPB members acted consistent with state law. See Brooks v. Chapman, No. 1:22cv305, 2023 U.S. Dist. LEXIS 136149, *17 (E.D. Va. Aug. 4, 2023) ("even if plaintiff had been considered for parole by three or fewer members of the [VPB], this would amount to no more than a violation of the Board's guidelines and would not equate to a constitutional violation cognizable in federal court").

In support of his claim that there were no confirmed VPB members after March 10, 2022, Berry alleges the VPB violated Virginia Code §§ 2.2-200(C)(1) and 2.2-105 because the General Assembly did not approve Governor Youngkins' nominees and therefore, as of March 10, 2022, there were no confirmed members to make a decision." [Dkt. No. 1 at 17]; see also [Dkt. No. 16 at 20]. Section 2.2-200, however, does not apply to the VPB and sets forth the duties of the Governor's Secretaries. Section 2.2-200(A) provides:

> The Governor's Secretaries shall be appointed by the Governor, subject to confirmation by the General Assembly if in session when the appointment is made, and if not in session, then at its next succeeding session. *Each Secretary shall hold office at the pleasure of the Governor for a term coincident with that of the Governor making the appointment or until a successor is appointed and qualified.*

(Emphasis added).[9] Section 2.2-200 (C)(1) provides that "Unless the Governor expressly reserves such power to himself and except as provided in Article 4 (§ 2.2-208 *et seq*.), each Secretary may: . . . Resolve administrative, jurisdictional, operational, program, or policy conflicts between agencies or officials assigned." Section 2.2-105 provides that

> No person appointed to any office by the Governor, whose appointment is subject to confirmation by the General Assembly, shall enter upon, or continue in, office after the General Assembly has refused to confirm his appointment. Nor shall such

---

[9] The emphasized language in the statute is consistent with respondent's affidavit that appointees can "holdover" and are authorized to continue to fulfill their appointed duties until a successor is appointed, which indicates that Berry's argument has no merit.

12

> person be eligible for reappointment during the recess of the General Assembly to fill the vacancy caused by the refusal to confirm.

The VPB members that heard and denied Berry's parole on March 17, 2022, were previously appointed and confirmed by the General Assembly, and consistent with Virginia law continued on in their positions until replacements were appointed. In any event, the subsequent March 6, 2023 decision denying Berry parole renders his argument moot. See, supra at 10-11.

### C. Claim 3

In Claim 3, Berry alleges that the Supreme Court of Virginia erred in holding that it did not have jurisdiction to consider Berry's state habeas petition. The Supreme Court of Virginia dismissed the state habeas petition and held that it was "of the opinion that petitioner's claims concerning the denial of discretionary parole are not cognizable in a petition for a writ of habeas corpus. *Carroll v. Johnson*, 278 Va. 683, 694 (2009) (citing *Virginia Parole Board v. Wilkins*, 255 Va. 419, 420-21 (1998))." Berry, Record No. 220355, at 43. The Supreme Court of Virginia also held, with respect to the alleged improper classification of good time, that

> petitioner's claim concerning the rate at which petitioner's good conduct or sentence credit is calculated, is not cognizable in a petition for a writ of habeas corpus. This Court's habeas corpus jurisdiction includes "cases in which an order, entered in the petitioner's favor . . . will, as a matter of law and standing alone, directly impact the duration of a petitioner's confinement." Id. The court's habeas corpus jurisdiction, however, does not extend to
>
>> disputes which only tangentially affect an inmate's confinement, such as prison classification issues concerning the rate at which a prisoner earns good conduct or sentence credits, or challenges to parole board decisions.

Id.

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, "claims of error occurring in a state postconviction proceeding cannot

13

serve as a basis for federal habeas corpus relief." Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (citations omitted). This is so because the habeas petitioner's detention results from the underlying state conviction, not the state collateral proceeding and "[a] state prisoner has no federal constitutional right to post-conviction proceedings in state court." Lawrence v. Branker, 517 F. 3d 700, 717 (4th Cir. 2008) ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself.") (citing Bryant, 848 F.2d at 493; Bell-Bey v. Roper, 499 F.3d 752, 756 (8th Cir. 2007); United States v. Dago, 441 F.3d 1238, 1248 (10th Cir. 2006))); see also Jamison v. Cohen, 756 F. App'x 265, 270 (4th Cir. 2018) (citing Lawrence, 517 F.3d at 717). Therefore, "even where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." Id. Therefore, Berry's Claim 3 in which he complains about errors in his state habeas proceedings fails to provide a viable basis for federal habeas relief and will be dismissed.[10]

---

[10] Lawrence also observed that "[a] state prisoner has no federal constitutional right to post-conviction proceedings in state court." 517 F.3d at 717 (citing Lackawanna Cty. Dist. Att'y v. Coss, 532 U.S. 394, 402 (2001) (noting that "each State has created mechanisms for both direct appeal and state post-conviction review, even though there is no constitutional mandate that they do so" (internal citations omitted)). Lackawanna County also held that "there is no constitutional mandate that" states "create[] mechanisms for both direct appeal and state post-conviction review. Id. (citing Pennsylvania v. Finley, 481 U.S. 551, 557 (1987) (no constitutional right to state postconviction review); Abney v. United States, 431 U.S. 651, 656 (1977) (no constitutional right to direct appeal)); see also In re Vial, 115 F.3d 1192, 1197 n.10 (4th Cir. 1997) (observing that a federal inmate "does not possess a Fifth Amendment right to attack his sentence in a collateral proceeding") (citing United States v. MacCollom, 426 U.S. 317, 323 (1976) (plurality opinion)).

## IV. Conclusion

For the foregoing reasons, respondent's motion for summary judgment [Dkt. No. 24] is granted, and this petition must be dismissed with prejudice. An appropriate Order and judgment shall issue.

Entered this 28 day of Mar., 2024.

                                                                                 United States District Judge

Alexandria, Virginia